Good morning, everyone. Welcome. Our first case for argument this morning is Julie Su v. John Fernandez. Mr. Street. May it please the Court. Aaron Street on behalf of the appellants. The union that sponsored this plan devised the United Employee Benefit Fund to be a single Arisa governed plan with many employer subscribers. This was known as a Taft Hartley Trust. But now that everyone agrees that the fund turns out not to be covered by Arisa, the Secretary of Labor seeks to recharacterize the fund as consisting of numerous individual employer plans. Unwittingly created by the employers who just thought they were subscribing to a single multi employer plan. That outcome is contrary to common sense, the record, and this court's case law. The fund is a single plan governed by state law, and therefore the district court lacked subject matter jurisdiction to issue this preliminary injunction. Well, there is an individual subscriber agreement that each participating employer completes and specifies the particulars of the subscription agreement. And it is at least nominally collectively bargained. Yes, so taking the second part first, that it's nominally collectively bargained, I think the parties agree that this is not a result of the collectively bargained. So I think that does not weigh toward Arisa, that weighs against Arisa. But there is a master agreement with the union. There's a master agreement that creates the fund and the trust, and everyone agrees that's not an Arisa plan. And then as Your Honor mentioned, there's the subscription agreement where the employer selects the multiple benefits and that sort of thing. But that is just as consistent with simply subscribing to the multi employer trust. Doesn't that subscription agreement provide you with a source of financing when we're looking at the elements of what would have qualified as a plan? It lacks at least two. It does not define which are the eligible employees, and it does not contain any procedures for getting the benefits. All of those things you have to look to the trust. And I think the government's main case here. I think it was the benefit obligation form. Was that provided to each employee? The benefit obligation form, the subscription agreement and the benefit description, I think you may be referring to. Yes, that is provided to each employee. But that does not contain all of the elements of the plan that Your Honor referred to, nor does it incorporate the fund or the trust documents that do contain those elements. Instead, it's the reverse. The trust incorporates the benefit description into the SPD. So you have the fund is what was designed to be the plan here that was supposed to invoke ERISA jurisdiction. Now it failed to do that. The government's key case here is the Ed Miniot case. That's the case they say that stands for just subscribing to a multi employer plan is sufficient. But I think that case is really instructive on what this court considers critical. First of all, the court there said that there were a distinct set of plan documents. There you had individual documents from the individual employer level that satisfied the elements, and you had those documents incorporating the elements from the multi employer trust. When you're looking at Docket 67, where Chief Sykes started, when we're looking at that summary plan, does it not outline, though, the benefits of how does a beneficiary pull down these benefits? And so particularly pages 65 and 66. Yes, the summary plan description absolutely does that. But that is a fund document. So we have no doubt that these employers and this fund tried to create an ERISA plan at the multi employer level. But because that was part of it failed to create ERISA jurisdiction, we all agree. So the department has shifted and is trying to look at the individual employer level and trying to rely on the Ed Miniot case. But I would also direct the court, besides the distinct plan documents in Ed Miniot, footnote two of Ed Miniot says that the individual employers there were the named fiduciaries. The individual employer plans were the plan administrators. In these set of documents, the fund, the trustees of the overall fund, are named expressly as the plan administrators and the named fiduciaries. So that indicates that unlike in Ed Miniot, the fiduciary duties, the plan, is to be carried at the fund level. Also in Ed Miniot, as we pointed out in our brief, the individual employers there had control and owned the assets. They owned the insurance policies. This court said, it quoted, that the individual employers there had the ability to amend the trust. The employers here don't have any control over these assets. The fund buys the insurance policies. The fund owns the insurance policies. And the fund is the only one that has the ability to amend the trust. So what I'm hearing is that there is no distinction between the fund and, looking at Ed Miniot, there was a distinction between the fund and then what we had is the benefits. Yes. There was, in Ed Miniot, there were, at the individual employer level, there were fiduciary duties created. They owned the assets. They were able to amend the plan. They were the named fiduciary and the plan administrator. And the whole point of, I think, this inquiry is really to determine, is the employer taking on some ongoing obligation to provide benefits in a way that creates the discretionary fiduciary duty? That's what all the cases talk about. There's none of that here. These employers simply agreed to subscribe to a multi-employer fund, and that was it. They write the checks. That's it. They don't administer the plan. They don't own, as in the Brundage case, they don't own any of the assets. There, the employer directly contracted with the insurance company and owned the assets. So that's a very different situation than we have here. And I think it's important to note that the Secretary's position here creates major federalism problems. If you accept their position that any time there is a multi-employer trust that has individual employer subscribers, that that's going to be governed by ERISA, then that would completely wipe out the category of state law governed multi-employer welfare arrangements, which is something that is smack dab in ERISA. ERISA wants state law to govern these multi-employer welfare arrangements, unless they fall within very narrow categories like Taft-Hartley trusts. But they would completely wipe that out. That would all become federalized, and I think that's a major problem with their position. I would also point out that we are at the preliminary injunction phase here, which means that the department had a duty to bring forward evidence. They couldn't just allege that individualized plans exist like they did, like they were able to do in Edminia. They had to come forward with evidence, and all they have pointed to is that subscription agreement, which doesn't contain all of the elements of the plan, which simply says we're subscribing. You would have that in any subscriber arrangement. And again, you have the fund documents that say that's where all the fiduciary duties are carried, the ownership of the policy, the administration of the policy, and the named fiduciary duty there. So we are really in a set of cases that is governed by the Supreme Court case of Fort Halifax, which expressly says, and this court's decision in Bowles, which the parties have cited, which follows on Fort Halifax, Bowles says that the decisive inquiry is whether the employer has an ongoing administrative scheme to oversee the plan, whether they're making discretionary judgments about paying benefits and things like that. We have none of that here. That's all done by the fund level, and that's this court's precedent and governing Supreme Court precedent. The Fort Halifax case says, and I quote, to do little more than write a check hardly constitutes the operation of a benefit plan. That's what we have here. These employers write a check, they subscribe, their duties are done. What happens to the collateral litigation and investigation if you win? So the investigation piece of it is done. There's collateral litigation that much of which has wrapped up, which our clients in their capacity of trustees brought against the wrongdoers and got recoveries. That's mostly wrapped up. We have some individual suits against the fund, but if there's no ERISA jurisdiction here, there's no ERISA jurisdiction over any of that. That's why I'm asking. Right. Will it undo? A finding of no subject matter jurisdiction here will undo? I don't think it will undo settlements that have been entered, but I think that what would happen is if there's anything left that's still ongoing, that would be subject to state fiduciary duty litigation. So if there's anyone else the trustees or the fund needs to go after before the fund terminates or after the fund terminates for that matter, it would be done under Illinois state law. No statute of limitations problems? I have not analyzed that question, Your Honor, and I'm not familiar with the Illinois statute of limitations. But I think, again, it's mostly wrapped up is, I think, the first answer. The fund is about to terminate according to its terms. The termination has already been triggered. And to the extent there are any issues with pursuing it in state court, which I'm not aware of, then unfortunately that would be the result of a lack of federal subject matter jurisdiction. That's inherent in the limited nature of federal court jurisdiction. Yeah, understood. And I guess with that— Do you mind if we move, if we find subject matter jurisdiction, moving a little bit to the merits before you get into your rebuttal time? I did have a question concerning irreparable harm. Sure. And the argument presented is that the district court abused its discretion by finding irreparable harm. Can we spend a little bit of time that we have just talking through if the fund— Let me allow you to kind of address that question first before I follow up, because I do have some more pointed questions as to whether or not abuse of discretion can be found based on the record we have in front of us. Sure, sure. And, of course, likelihood of success is a non-negotiable element. So if you do find that there's a possible likely lack of jurisdiction here, then we're done. We don't get to irreparable harm. Our basic argument on irreparable harm, to summarize it is, the fund here is about to terminate according to its terms either way, regardless of whether the independent fiduciary is in office or whether our clients, the former trustees, are in office. And the individuals are protected because their only right is to get a payout upon their death. That's going to happen no matter what. That's secured by a life insurance policy. So given those circumstances, what the district court was looking at, which is the fund is having to pay money for attorney's fees into defending against criminal investigations, going against the wrongdoers, that can be recouped if any of that was unreasonable. District court didn't find it was unreasonable. But if it were found to be, Baker Botts is a solvent law firm. We have an arbitration provision where we can give back anything that's found to be unreasonable. So that's our basic position on irreparable harm. Thank you. Ms. Florkowski. May I please report? Dana Florkowski, appearing for the affiliate, the acting secretary of labor. There is no dispute or question here that the United Employee Benefit Fund was egregiously mismanaged by the appellants. This aspect of the district court's findings is not contested here. The first issue this court must address is whether, upon subscribing to the fund, the employers created their own individual employee welfare benefit plan subject to ERISA. First, I would like to address the federalism argument that the appellants raised in their reply brief and again today in court. They attempt to frame this case as an erasure of state regulatory authority over insurance, stating that if this court finds that the individual employers created their own employee welfare benefit plans, state regulatory authority over insurance will be swallowed up by federal authority. But it is not so. Funds such as the UEBF are within the state's regulatory authority. The UEBF is not itself an ERISA plan, so state insurance law is free to govern it. In fact, even if the fund itself were an ERISA plan, under ERISA's preemption provision in Section 1144, state insurance laws could still apply to the arrangement. This is an area over which the Secretary and the states have concurrent jurisdiction. The appellants have also argued that no court has found, under the exact set of facts that are present here, that employer plans were created. They attempt to point to different issues, such as control over the assets, to state that this court should not find that jurisdiction is proper here. But, of course, it's the case that this court has never addressed a case with exactly the same facts that are present here. But even though the facts in this case are very complex, they can still be analyzed under existing precedents, and there is every indication that the employers created their own individual employee welfare benefit plans when they subscribed. Is there any support in any circuit for a subscription agreement as skinny as this one constitutes an ERISA plan? I mean, it's basically just a single document with some checkboxes. I'm not sure, Your Honor, if any. I haven't read the subscription agreements or the documents that other circuits have relied upon. However, I do not believe that this court, excuse me, under the test that this court adopted in Edminiat, I do not believe that it is necessary that the subscription agreement be extremely detailed. In fact, ERISA jurisdiction can be proper even when there is no written document, which the appellants themselves concede. ERISA does require a written document, but that is not a way to avoid ERISA covering a plan. Does the employer have to assume a fiduciary responsibility in order for ERISA jurisdiction to kick in? And if so, does the subscription agreement do that? An employer, or at least a plan, must have fiduciaries. There must be individuals with fiduciary duties to the plan. And I do believe... Is there anything in the record here that suggests that the employers, the subscribing employers, participating employers assumed a fiduciary responsibility with their subscription agreements? I believe, yes, Your Honor, because the employers, at least there was some responsibility that the employers had related to the ongoing administrative scheme of the individual plans. For example, the employers were responsible for, they set the parameters for which employees would be eligible, and then the employers... I'm sorry, can you repeat that one more time? It's a little hard for me to hear you. Sorry, Your Honor. It's fine. The employers in the benefit description, they set the parameters for which employees would be eligible. So, for example, I believe in the sample that we have in the docket, the employees who had been employed for at least one year would be eligible. Presumably, the employers would also be responsible for identifying which employees became eligible for the plan. Employers also had an ongoing responsibility, a monthly responsibility to make the payments as necessary for their employees' benefits. And so employers did have an ongoing administrative responsibility to the individual plans here. Any discretionary authority? I would need to examine the record further, Your Honor. I apologize. It is kind of an important question. Yes, of course. Because it's the distinction between a mere contractual responsibility to the employees and a fiduciary responsibility to the employees. Yes. And ERISA is all about fiduciary duty. Correct, Your Honor. The employers did have the discretionary authority to enter into through the... Excuse me. Employers had the discretionary authority not individually to terminate their involvement in the fund, but they did have the... If they chose to...  Your Honor, if the employers chose to no longer be part of the collective bargaining agreement, then they would cease to be involved with the fund as well. But that's a matter of contract as well. Yes, Your Honor. And I believe that the most relevant test here, the most relevant information to whether or not the employers created the individual employee welfare benefit plans, is the test that this Court adopted in Edmoniot. But before we get to that test, looking at the plan, if we want to accept that there was a plan in place, the question I asked is, was there any discretionary authority by the employers? And so I didn't hear your answer to that question. I believe that there was discretionary authority by the employers in that they were able to act to terminate involvement, and that would be an act of discretion. You said that they could terminate employees or they could determine eligibility? They could determine eligibility, yes, Your Honor. And so now I'd like to turn to the test in Edmoniot. A plan exists where a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures. I believe that all of these are clearly demonstrated by the documents, including the subscription agreement, the benefit description, and other documents as described in the Secretary's brief. Under this test, the employers did clearly establish the plans. That multiple documents must be read together to understand each individual plan is permissible under Edmoniot. As in Edmoniot, this court found that it was permissible to read other documents, for example, a subscription agreement, in order to understand the benefits, beneficiaries, financing, and procedures. And as I discussed earlier, the employers, this is not a case that is analogous to Fort Halifax, because the employers were involved in an ongoing administrative scheme, which did require their ongoing acts of administrative responsibility, such as the monthly contributions and the identification of their eligible employees. What is your best argument that the fund is distinct from what we've identified now as the ERISA-covered plan? That each plan could have its own separate terms. So, for example, each plan? Each individual employee welfare benefit plan could have distinct terms. For example, an employer could choose whether or not they would offer that the coverage for the death benefit would continue into retirement, or whether or not the employer could choose whether or not they would cover their employees immediately or after a certain time of service. And they could also choose the percentage of the employee salary that would be covered by the death benefit and the minimum possible benefit. And so each individual plan did have distinct terms. It was not that they were all identical. And I believe that because you would need to look to the individual plans to find, for example, the benefits, that's, I believe, a strong indication that the employers created their own plans. Turning to irreparable harm. The district court did not use its discretion in finding that the harm that would result would be irreparable if the trustees, if the appellants here were permitted to carry on as trustees. The district court found that in its order that there was a significant risk of irreparable harm should they continue to have that authority and control over the fund. And this was due to the fund's substantial expenditures on legal and administrative expenses. Appellants were rapidly depleting the fund's assets. And the district court found that the secretary's ability to restore the fund and the participant's interest were at risk of being irreparably harmed. And I believe this was further confirmed upon the installation of the independent fiduciary and the subsequent issuance of the amended preliminary injunction, where the district court noted that the independent fiduciary had made findings that hundreds of thousands of dollars were missing from the funds that had previously been reported and that the records were in disarray. And I could also address the joint privilege and common interest that I know that the appellants did not address yet. Is it the secretary's position that there are no documents covered by the attorney-client privilege here? Yes, Your Honor, essentially, because the joint privilege or common interest privilege, this only applies where the parties share a common legal interest. However, the fiduciary exception to the attorney-client privilege is only when advice is sought as to a fiduciary's own liability. It is difficult to imagine, and the appellants have not provided any clear examples of how advice sought as to the appellant's breaches of fiduciary duty to the very fund that they are now claiming to have a common legal interest with could possibly be in the fund's common legal interest. Even in a criminal investigation? Yes, Your Honor, because, again, if the advice was sought as to their own fiduciary liability, this could not possibly be in the common interest of the fund. When looking at the question of irreparable harm, is the focus on the financial health of the fund, or is it the focus on the former trustees? The focus is on both, Your Honor. The focus is on the former trustees due to their, as I stated earlier, their various acts where they have depleted the assets of the fund. And additionally, they failed to accurately or adequately record keep to the point where the independent fiduciary was not initially able to determine who even was eligible for benefits, who the beneficiaries were based on the fund's documents, which were an utter disarray. So the harm to the fund, it would be from the further continuance of the regime as it was under the former trustees, as they had failed to accurately record keep and could continue to do so. And also the continued depletion of fund assets, of fund funds by the trustees if they were put back in their position. So there was a lot of focus on the financial health of the fund. But what in the record from the findings of the court focused on the former trustees' financial health? Oh, you mean their ability to repay in the indemnification agreements? So the district court did find that the indemnification agreements and their issuance shortly after the investigation began to be deeply troubling. The district court was concerned by this. And the district court was concerned about the former trustees' use of the funds, like of the funds contained by the fund for their own benefits. And they did, the district court did note this. But it's an irreparable harm, meaning an inability to pay. And so if you're telling me that the court should have focused on both, we see a lot regarding the financial health of the fund. And so my question is, what evidence do we have that the judge relied on regarding the financial health of the former trustees? Well, I believe the district court judge, she did primarily, or did discuss in more depth the financial harm to the fund. And so that was certainly a very important factor in the district court's decision to issue the preliminary injunction here. However, the district court did note, as I mentioned, that the former trustees appeared to be acting in their own interest, and that the indemnification agreement was deeply troubling. And so there is reason to believe that these factors, that these facts that the district court judge noted were also— Were there any facts to suggest that the trustees could not pay? Yes, Your Honor, there were. Though I do not know if it made it to the district court's decision. I don't believe it did. I apologize. So that's really where we have to focus, right, is what were the findings of the district court? And so were there any findings regarding their financial health? I do not believe there were, Your Honor. All right. Thank you. Before you conclude, one last question on the jurisdictional argument. Assuming we accept the Secretary's argument that the subscription agreement in its four corners gives us enough information to identify or gives a reasonable person enough information to identify the benefit, the death benefit, the beneficiaries, who's paying for it, and the procedure for receiving benefits, although I don't see anything in the document that addresses that last point. But let's assume that, for the sake of argument, there is an additional requirement of some ongoing administrative scheme or practice on the part of the employer, the participating employer. What is the totality of the evidence on that? Is it just the ongoing payment responsibility? It is the ongoing payment responsibility as well as the employer's responsibility to identify employees that may become eligible for the plan. What's the evidence of that? In the benefit description, it states that the employees who will become eligible. It states the requirements, for example, that the employee be employed for a year or more. I'm sorry. I didn't hear that. Sorry, Your Honor. In the benefit description, it states that that particular employer selected that employees who had been employed for a year or more would become eligible. And there is no indication that the fund would be able to provide that information. Okay. Thank you. Thank you, Your Honor. Mr. Street. Thank you, Your Honor. And I want to go right to the court's questions on jurisdiction and then circle back to irreparable harm. You started off, Chief Judge Sykes, by asking if there's any circuit support for such a skinny subscription agreement creating a plan. And the answer, as my colleague essentially conceded, is that there is not. The best case is the Taggart case from the Fifth Circuit. It's an old case, but here's what it said. There's no individual employer plan, quote, where the purchasing employer, which is the subscriber there, neither directly nor indirectly owns, controls, administers, or assumes responsibility for the policy or its benefits. That's our position in a nutshell. If you have no ongoing responsibility to administer it, you don't own any of the assets, you don't contract with the insurance company, there's no plan. That's also consistent with the much more recent First Circuit case, which we cite in our reply brief, New England Mutual v. Baig, where somebody else purchased an insurance policy, not the employer, and the court said that that wasn't enough because there was no ownership of the assets and there was no ongoing duty. The court there said a mere purchase of insurance is not enough to establish a plan under ERISA. Now, on the questions of whether there's any ongoing fiduciary duty here, I think my friend suggested the payment of premiums. There's no case that just says mere payment of premiums is enough. That's the quote I just read from the First Circuit, mere purchase of insurance is not enough. They suggested that it defines eligibility and has some ongoing duties there. That's not correct. The subscription agreement doesn't even address the union employee's eligibility. It just addresses the management. And I'll give the court a record site directly to this issue. It's docket 123-13 at page 7, 123-13 at page 7, and it expressly says, I'll quote it. It's a little convoluted, but I'll quote it. The employer recognizes that the above-named parties, when you look to see who that is, it includes the fund, the United Employee Benefit Fund. Those parties will rely on the information which it has furnished to them to determine eligibility. So it's the above-named parties that are going to do all the ongoing administration to determine ongoing eligibility. This is a far cry from Ed Miniot. I mean, I think Your Honor's questions got to that. There was no fiduciary named at the individual employer level. There was no ongoing administration. Certainly. Have we ever held, though, that it must be the employer doing the administration? I think that's what Bowles holds, which applied Halifax. Termination was suggested, that the ability to terminate the plan was somehow a fiduciary function. That's trust law 101. Termination is a settlor function. That's not a fiduciary function. And then I think finally they fell back to the minor amount of distinct terms. Just to push back a little bit on the Bowles holding. Didn't we hold there, though, that there must be an ongoing administration program? For there to be a plan. Right. Right. And there was no ongoing administration for there to be a plan. Here there is an ongoing administrative program. Absolutely, we agree with that. That's what I'm saying. Does Bowles hold that the administrator must be the employer? No, it doesn't, because that wasn't an issue in that case. Right? But it did say that that was a prerequisite of a plan. Right. And so if there were any plan here, it would be the fund, but we know that's not covered by ERISA. If I could just briefly wrap up on the minor amount of the distinct terms. There's no case supporting that just some minor amount of customization up front somehow gives you enough fiduciary duty, and especially as we talked about the eligibility itself is actually determined by the fund. Happy to address the irreparable harm if you would like, but other than that, thanks. All right. Thank you very much. Our thanks to all counsel. The case is taken under advisement.